Estate of John W. Anderson, Deceased, Wendell W. Anderson, Administrator with Will Annexed v. Commissioner.
Estate of John W. Anderson v. Commissioner
Docket No. 24124.
United States Tax Court
1951 Tax Ct. Memo LEXIS 150; 10 T.C.M. (CCH) 723; T.C.M. (RIA) 51232; August 7, 1951
*150 During the period 1942 to July 1944, petitioner's decedent received payments from a corporation in discharge of that corporation's obligation to return to decedent a contribution made in 1935 in settlement of assessment liability asserted by the receiver of an insolvent bank plus interest at five per cent. Held, that portion of the payments equal to the contribution the corporation was obligated to return constituted a return of capital, and the balance constituted interest income. Arthur L. Evely, Esq., for the petitioner. Cyrus A. Neuman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent has determined a deficiency of $8,633.22 in decedent's income tax for the taxable year 1944. Petitioner contests that part of the deficiency which results from *151 respondent's determination that $18,654.40 of the $23,565.22 received by decedent from the Guardian Depositors' Corporation in July, 1944 constituted interest income. Findings of Fact Decedent filed his income tax return for the taxable year 1944 with the collector of internal revenue for the district of Michigan, at Dertoit, Michigan. John W. Anderson, decedent, died on November 21, 1945. Wendell W. Anderson, petitioner herein, was appointed by the Probate Court for the County of Wayne, State of Michigan, Administrator-with-Will Annexed of the estate of the decedent on November 30, 1945. He was discharged as administrator by the Probate Court on May 12, 1949. Prior to 1933, decedent had acquired 7,554 shares of stock of the Guardian Detroit Union Group, Inc. (hereinafter referred to as the Guardian Group), a corporation holding the stock of certain banking corporations, including the Guardian National Bank of Commerce of Detroit (hereinafter referred to as the Guardian Bank) and five other national banks located respectively in Grand Rapids, Michigan; Jackson, Michigan; Lansing, Michigan; Niles, Michigan, and Ionia, Michigan (hereinafter referred to as the out-state banks). *152 In 1933 the Guardian Bank suspended its banking operations and was declared insolvent by the Comptroller of the Currency. A receiver was appointed and a stock assessment was levied upon the shareholders of the bank. The receiver took the position that the shareholders of the Guardian Group were liable for this assessment and started suit in the United States District Court for the Eastern District of Michigan, Southern Division, to enforce this liability. The other national banks named above also became insolvent in 1933 and the receivers appointed for them similarly asserted stock assessment liabilities against the shareholders of the Guardian Group. The capital stock of the Guardian Group became worthless and as a result thereof decedent sustained a $368,002.49 loss. This loss was deducted by him on his 1933 individual income tax return but no tax benefit was obtained. During the pendency of the litigation above referred to, a committee was formed to represent the depositors of the Guardian Bank. The committee prepared a plan for the liquidation of this bank, which was approved by the Comptroller of the Currency and made public October 25, 1934. The plan provided in part *153 as follows: "PLAN FOR LIQUIDATION OF GUARDIAN NATIONAL BANK OF COMMERCE OF DETROIT "OUTLINE OF PLAN "Creditors of this bank (hereinafter referred to as 'Guardian Bank') have up to the present time received dividends equal to 68% of their allowed claims. In connection with the payment of the last dividend, (8%), certain of the larger depositors consented to the use of their share of this dividend in such way that all depositors (approximately 135,000) having claims of $1,000 or less could be paid in full. "At the time this arrangement was made it was proposed to submit a Plan involving the termination of the receivership and the liquidation of the remaining assets of the Bank through a liquidating corporation. The undersigned Committee, serving at the request of the Comptroller of the Currency, has prepared such a Plan and with his approval herewith submits the same. "The Plan contemplates: (a) a settlement of all liability to assessment upon the shares of said Bank; (b) a sale of the Bank's assets under order of a court of competent jurisdiction and with the approval of the Comptroller at an appraised value, as approved by the Comptroller, to a Corporation (referred to as *154 Depositors' Corporation) to be formed for the purpose of acquiring and liquidating such assets; (c) the assignment to such Corporation by Bank creditors of the unpaid balance of their claims which will be used by such Corporation in acquiring such assets; (d) the issuance of participation certificates to such creditors entitling them to their pro rata share of the liquidation and earnings of such assets; (e) the payment in cash to those creditors electing not to assign their claims of a final dividend representing their pro rata share of the amount realized on such sale; and (f) the termination of the Receivership. "After payment of all indebtedness to Reconstruction Finance Corporation, and other indebtedness (if any) incurred by such Corporation, the assets acquired will be liquidated, first, for the benefit of those creditors assigning their claims, until such claims are fully paid, with interest as provided in paragraph 8; second, repayment of the capital of the corporation to those who furnish the same; third, for the reimbursement of those who subscribe and pay into the Settlement Fund to the extent that such amount is paid to the Receiver of the Guardian Bank to discharge *155 stockholders' liability, and finally for distribution of the remainder among the stockholders of the Guardian Bank. "As soon as may be after such sale is completed the Receivership will be terminated. It is the belief of the Committee that this Plan will be beneficial to the depositors and creditors of the bank and to the general business and banking conditions in Detroit. * * *
"SETTLEMENT OF STOCKHOLDERS' LIABILITY: "1. It is proposed to raise a fund from the holders of Guardian Group stock which, together with those assessments already collected by the Receiver of the Guardian Bank, and by the Receiver of any of the following banks, from stockholders who agree to said Plan and execute the Waivers referred to in Paragraph No. 4 hereof, will be accepted by the Comptroller in full satisfaction and discharge of all liability for assessment in connection with the Guardian Bank, and the following national banks: - Grand Rapids National Bank, Grand Rapids, Michigan; Union & Peoples National Bank, Jackson, Michigan; Capital National Bank, Lansing, Michigan; City National Bank & Trust Company, Niles, Michigan; and National Bank of Ionia, Ionia, Michigan. "2. The entire amount *156 tentatively fixed by the Comptroller as necessary to effect such settlement is $5,040,000. When the fund is collected, it will be paid to the Receivers of said banks in proportion to the respective capital of such banks and the liability of all stockholders of said banks and of the Guardian Detroit Union Group, Inc., and its stockholders for assessment in connection therewith will be settled and released. "3. Subscriptions to this Fund (herein called 'Settlement Fund') and the use of the amounts so collected for the purpose aforesaid will be contingent upon the Plan being declared operative by the Committee, and this will in turn depend upon the co-operation given to the Plan by both depositors of the Guardian Bank and by the Group stockholders. * * *
"5. In the event that more than the amount required to effect said settlement is subscribed, the excess shall be adjusted among those paying the largest percentage of their total liability so as to equalize as far as may be the payments to said fund. "ASSIGNMENT OF CREDITORS CLAIMS TO DEPOSITORS' CORPORATION: "6. A corporation will be formed to be known as 'Guardian Depositors' Corporation' (or some other suitable name), *157 (hereinafter referred to as 'Depositors' Corporation'), having common stock in an amount to be determined by the Committee but not less than $10,000 nor more than $50,000. Each subscriber to the aforesaid Settlement Fund shall be entitled to subscribe for stock in the Depositors' Corporation in the proportion which his subscription bears to the amount paid into said Settlement Fund, as follows: - One share for each $100 or major part thereof paid by him to the Settlement Fund. The subscription price shall be fixed by the Depositors' Committee at not less than 20", nor more than $1.00 per share. Shares representing this stock will be issued to Trustees selected in the first instance by the Depositors' Committee. * * *
"8. Each creditor who shall assign his claim to such Corporation as herein provided, will receive from the Corporation the obligation of the Corporation in the form of a Participation Certificate, to pay such depositor, after all other debts of the Corporation shall have been paid, or provided for, his pro rata share of the net proceeds of the liquidation of the assets of such corporation, and of the earnings thereof, until such depositor shall have received an *158 amount equal to the unpaid balance of his claim against the Guardian Bank assigned to such corporation plus interest at the rate of 2% per annum as aforesaid, upon the balance of such claim remaining unpaid from time to time. "After payment of such Participation Certificates any further distribution shall be made upon the stock of the Depositors' Corporation and shall be redistributed by the Trustees to the subscribers to the capital stock of such corporation pro rata until such subscribers shall have had returned to them the amount of their subscriptions, together with interest thereon at the rate of 5% per annum from the time when such subscriptions were paid; and thereafter, to the subscribers to the Settlement Fund until there shall have been repaid to them the amount of their subscriptions, to the extent that such amount is paid to the Receiver of the Guardian Bank, plus interest at the rate of 5% per annum from the time such subscriptions were paid to the Receiver of the Guardian Bank. Thereafter, all distributions made upon the stock of the Depositors' Corporation shall be redistributed to the stockholders of the Guardian Bank pro rata. "9. The Trustees shall hold the stock *159 of the Depositors' Corporation under a Voting Trust * * *. "Upon the termination of the Voting Trust, if the Corporation shall not have been fully liquidated, the stock of the corporation shall be turned over by the Trustees to the stockholders of the Guardian Bank, subject however to the aforesaid rights of those who furnish the capital of said corporation, and of the subscribers to the Settlement Fund, to be reimbursed as aforesaid out of dividends paid on said stock. "10. Depositors and creditors whose claims have been allowed are urged to assign the unpaid portion of their claims against the Guardian Bank to such Corporation. The claims will be used by such Corporation in acquiring the assets of the Bank upon the sale thereof, as hereinafter described. "SALE OF ASSETS: "11. When an amount sufficient to effect the settlement of the stockholders' liability shall have been paid in and when claims of a sufficient amount in the opinion of the Committee and the Comptroller to justify it in declaring the Plan operative have been assigned to the Depositors' Corporation, the amount necessary to effect the settlement will be paid to the Receivers of the various banks upon a sale *160 of all the assets of the Guardian Bank at an appraised value, with the approval of a court of competent jurisdiction. It is expected that this appraisal will be for an amount sufficient, after deducting the expenses of the Receivership, to pay the unsecured known creditors of the Guardian Bank an additional 19%. * * *
"DISCHARGE OF THE RECEIVER: "14. When the stockholders' liability shall have been settled and released, and when the sale of the assets of the Bank shall have occurred, as above outlined, and such assets conveyed to the Depositors' Corporation, the Receivership will be terminated as soon as may be. The Receiver will, of course, remain to pay the final dividend and attend to all matters necessary or incident to the closing out of the Receivership and winding up of the affairs of the Bank. "DECLARING THE PLAN OPERATIVE: "15. The Plan can only be made effective and such sale can only be accomplished if sufficient creditors assign their claims to the Depositors' Corporation so that they may be used to acquire the assets on such sale and only if sufficient of the stockholders subscribe and pay into the Settlement Fund so that the stockholders' liability can be *161 discharged. "The Committee, therefore, will declare the Plan operative, only if a sufficient sum is subscribed and paid into the Settlement Fund and if sufficient claims against the Bank are assigned to the Depositors' Corporation as above set forth. If the Plan is not declared operative, or, if it is not made effective, all assignments of claims and subscriptions or payments to the Settlement Fund received by the Committee will be cancelled and returned. * * * "19. Unless otherwise indicated 'Receiver' means Receiver of Guardian Bank; 'Bank' means Guardian Bank; 'Corporation', means Guardian Depositors' Corporation. "HUGH J. FERRY, Chairman MEYER L. PRENTIS C. DAVID WIDMAN HORACE A. DAVIES B. J. CRAIG "Dated: October 25, 1934. Guardian Depositors' Committee" Pursuant to the plan, the Depositors' Committee solicited subscriptions from stockholders of the Guardian Group equivalent to $8.06623 per share of stock owned in compromise and discharge of their entire liabilities for assessment as stockholders of the Guardian Bank and the out-state banks. Decedent, as the owner of 7,554 shares, subscribed the sum of $60,932.30 to the aforesaid Settlement Fund and paid the subscription *162 on February 14, 1935. He did not take any deduction on his 1935 income tax return on account of the aforesaid payment and did not receive any tax benefit in respect thereto in 1935 or in any other year. In 1939 and 1940 the Guardian Depositors' Committee paid to the holders of Settlement Fund Certificates so-called "equalizing dividends" for the purpose of refunding to subscribers all that portion of their subscriptions which was in excess of $7.38 per share of stock held. Decedent received equalizing dividends in the amount of $5,183.77, reducing his net subscription payment to $55,748.53. In February, 1942, the Guardian Depositors' Corporation (herein referred to as the Depositors' Corporation) created pursuant to the plan of liquidation announced that the claims of the depositors and creditors of the Guardian Bank had been paid and that funds were available for a liquidating dividend to the holders of Settlement Fund Certificates. By letter dated February 10, 1942, addressed "To the Holders of Trustees Settlement Fund Certificates of Guardian Depositors Corporation" a dividend of "10 percent of the principal amount of the net contribution of such Settlement Fund as shown by *163 the books of the Trustees" was announced. The letter contained the following statements: "In accordance with said Plan, you participated with other shareholders in the payment of $5,040,000.00 in settlement of the stock assessment liability to the six National banks of the Guardian Detroit Union Group, Inc. Of this amount, $4,000,000.00 was paid to the Receiver of the Guardian National Bank of Commerce of Detroit, in consideration of which the Trustees for the Guardian Depositors Corporation issued certificates (Settlement Fund Certificates) to the shareholders for the amount of assessment paid by each as evidence that the proceeds of the liquidation of the remaining assets, after payment of debts, expenses, remaining deposit liability and certain other charges, would be paid ratably to the holders of Settlement Fund Certificates until said $4,000,000.00 was repaid with interest at 5 percent per annum. Being one of such payers, you received a Trustee's Settlement Fund Certificate. * * *
"This payment is on the principal of the net contribution evidenced by your Settlement Fund certificate and no part of it applies against interest. Net contributions to the stock assessment *164 Settlement Fund aggregated $5,075,570.50. Of this amount, $4,000,000.00 was paid to the Receiver of the Guardian National Bank of Commerce and $1,040,000.00 to the Receivers of the outstate National banks of the Guardian Detroit Union Group, Inc. in settlement of assessment liabilities and $35,570.50 was used to cover expenses of collection, etc. There will be no recovery for Settlement Fund Certificate holders on account of any payments to the receivers of the outstate National banks. However, they will be entitled to reimment on account of the payment of $4,000,000.00 to the receiver of the Guardian National Bank of Commerce of Detroit, provided a sufficient amount is realized from the liquidation of the assets in the hands of the Guardian Depositors Corporation, and in addition will be entitled to receive interest at 5 percent per annum from June 1st, 1935 on this sum of $4,000,000.00 if a sufficient amount is realized from the liquidation of such assets. As of December 31, 1941, this interest amounted to $1,316,712.33 so that as of that date the holders of Settlement Fund Certificates were entitled to receive proceeds of liquidation, if available, up to $5,316,712.33 and, if eventually *165 paid, this sum will be sufficient to return the net principal amount of the Settlement Fund Certificates and provide some interest." Decedent received the so-called "liquidating dividend" in February, 1942, in the amount of 10 per cent of his net Settlement Fund payment of $55,748.53, namely, $5,574.85. In a letter to the Settlement Fund Certificate Holders dated March 10, 1944, the Depositors' Corporation announced a "Second Liquidating Dividend of 60%". Decedent in March, 1944, received the second "Liquidating Dividend" in the amount of 60 per cent of his net Settlement Fund payment of $55,748.53, namely, $33,449.11. In a letter dated July 12, 1944, the Depositors' Corporation announced a "final disbursement" with reference to his Certificate No. 38. The letter contained the following statements: "This payment discharges in full the liability of the Guardian Depositors Corporation and the Trustees of Guardian Depositors Corporation to the Trustees Settlement Fund Certificate holders. The amount, which you and other stockholders of the Guardian Detroit Union Group, Inc. contributed to the settlement of the assessment levied against the six closed National Banks in the Guardian *166 Detroit Union Group, Inc. was $5,075,570.50. Of this amount, $4,000,000.00 was paid to the receiver of the Guardian National Bank of Commerce of Detroit. This $4,000,000.00 (approximately 78.808% of the total contributions of $5,075,570.50) with interest at 5% from June 1, 1935 is the amount which the Guardian Depositors Corporation and the Trustees of Guardian Depositors Corporation agreed to distribute to the Trustees Settlement Fund Certificate Holders from the proceeds of the liquidation of the remaining assets of the Guardian National Bank of Commerce of Detroit, after all other creditors had been paid in full with interest, all in accordance with the plan of formation of Guardian Depositors Corporation dated October 25, 1934. * * *
This final disbursement, together with the liquidating dividends paid to you on February 10, 1942 and March 10, 1944, will provide a return of approximately 112% of your net contribution to the Settlement Fund." * * *
The letter also contained in its upperright corner the following computation: Cert. No.
38
Principal
$ 4,910.82
Interest
18,654.40
Total
23,565.22 Pursuant to the above letter of July 12, 1944, decedent *167 received from the Depositors' Corporation a payment in the amount of $23,565.22 as final payment with respect to his subscription to the Settlement Fund provided for in the plan of liquidation of the Guardian National Bank of Commerce. The aggregate amounts received by decedent from Depositors' Corporation, including the so-called "equalizing dividends" of 1939 and 1940 and the so-called "Liquidating Dividends" paid in 1942 and 1944, exceeded his original subscription to the Settlement Fund of $60,932.30 by the amount of $6,840.65. This amount decedent reported as a receipt of ordinary income on his individual income tax return for the calendar year 1944, and tax was paid thereon. The return, which was filed with the collector of internal revenue for the State of Michigan, at Detroit, Michigan, contained in an attached schedule the following explanation of this item: Income from Other Sources Guardian Depositors Corporation Excess of Repayment by Guardian Depositors Corporation over original stock assessment paid. Repayments
$67,772.95
Assessment
60,932.30
6,840.65 Original assessment paid in 1935 not taken as a deduction. In his notice of deficiency, *168 respondent determined that the entire amount of $18,623.36 received by John W. Anderson in July, 1944, from Depositors' Corporation constituted a receipt of interest, subject to income tax. Opinion ARUNDELL, Judge: Although no jurisdictional issue was raised, we have noted that according to the facts as stipulated the administrator was discharged by the Probate Court prior to the initiation of this proceeding. However, under section 312 of the Internal Revenue Code, a fiduciary once qualified to act for an estate continues in that capacity until he has advised the Commissioner in the manner provided by the Regulations (Regulations 111, section 29.312-1) that his fiduciary capacity has terminated. Estate of Nellie L. Rhodes, 44 B.T.A. 1315. Turning now to the merits, the sole question before us is what portion of the $62,589.18 received by decedent from the Depositors' Corporation constituted a return of capital and what portion constituted interest income. This payment originated in events occurring during the bank failures of the early 1930's. Prior to 1933, decedent was a stockholder in the Guardian Group, a corporation holding the stock *169 of the Guardian Bank and five other national banks in Michigan, referred to in the findings as out-state banks. In 1933 these banks became insolvent and the receivers appointed for them asserted assessment liabilities against the stockholders of the Guardian Group. The receiver of the Guardian Bank brought suit to enforce the liability he asserted. During pendency of this litigation, a committee was formed to represent the depositors of the Guardian Bank. Upon request, apparently of the Comptroller of the Currency, this committee submitted a plan having as its main purpose the termination of the receivership and the liquidation of the assets of the Guardian Bank. The plan provided for the organization of a liquidating corporation which was to acquire the assets pursuant to a sale under court order, liquidate them, and distribute the proceeds in a specified manner. The capital of this corporation, subsequently named the Guardian Depositors' Corporation, included the assigned claims of the Guardian Bank's creditors and proceeds from the sale of its own stock and from loans. In addition, it received contributions from the Guardian Group stockholders which were accepted by the receiver *170 of the Guardian Bank in full discharge of the assessment liability asserted against these stockholders. Although the essence of this plan was the liquidation of the Guardian Bank's assets, the provision relating to the settlement of the assessment liability provided for the settlement of the liabilities asserted by the receivers of the five out-state banks as well as that asserted by the receiver of the Guardian Bank. In accordance with this provision, each of the Guardian Group stockholders paid in to the Settlement Fund in lump sums an amount which was accepted by the Comptroller of the Currency in full discharge and satisfaction of their liability for assessment in connection with each of the six banks. The plan specifically stated that the corporation would be under no obligation to return that part of the contribution devoted to the settlement of the liability asserted by the receivers of the five out-state banks. In fact, the manner in which the corporation was to make distribution upon liquidation of the Guardian Bank's assets was carefully detailed and made no provision for such a distribution. However, the corporation was obligated to return the contributions relating *171 to the settlement of the Guardian Bank's liability, plus interest at the rate of five per cent if proceeds from the liquidation were sufficient. The committee solicited payments equivalent to $8.06623 per share of stock held in the Guardian Group in compromise and discharge of all six separate liabilities. Decedent as holder of 7,554 shares contributed $60,932.30. Later, the committee refunded that part of the contributions in excess of $7.38 per share. Accordingly, decedent received $5,183.77, reducing his contribution to $55,748.53, the sum which is significant for our purposes here. The Depositors' Corporation paid $4,000,000, which is approximately 78.808 per cent of the total net contributions in the sum of $5,075,570.50, to the receiver of the Guardian Bank. During the period 1942 to July, 1944, it distributed a total of $62,589.18 to decedent, allocating approximately 78.808 per cent of that distribution to principal and the $18,654.40 balance to interest. Petitioner contends that the contributions relating to the five out-state banks as well as the Guardian Bank contribution should be recovered before any of the $62,589.18 distributed to decedent is reported as interest *172 income. Under such an allocation, only $6,840.65 of the $62,589.18 would constitute interest income. We do not feel justified in regarding this distribution as anything other than what the parties intended it to be, and what it in fact was, namely, the repayment of the contribution relating to the Guardian Bank liability plus the stipulated interest. For convenience, perhaps, the contributions relating to the six separate liabilities were paid in one lump sum, but they nevertheless represented payments in discharge of separate liabilities. The Depositors' Corporation, through which payment was made, was merely a convenient medium for the settlement of several liabilities in one payment. The contributions did not represent an investment in that corporation and there is no evidence that the corporation was an operating company organized to speculate in the assets of the Guardian Bank. On the contrary, it was a liquidating corporation organized as a convenient device for the orderly liquidation of those assets. The Depositors' Corporation segregated the contributions relating to the Guardian Bank and assumed an entirely different responsibility with regard to them. Its responsibility *173 with regard to the contributions relating to the five out-state banks ended when the receivers of those banks accepted them in discharge of the liabilities. The plan specifically stated that these contributions would not be repaid by the Depositors' Corporation but that as to the Guardian Bank contribution the Depositors' Corporation would be obligated to make repayment plus interest at five per cent if proceeds from the liquidation of the Guardian Bank's assets were sufficient. This agreement was respected and adhered to by the parties at all times during the ten years from its inception in 1934 to the time of final distribution in 1944. We cannot rewrite this agreement and we see no reason for disturbing the allocation made pursuant thereto. We think the respondent's determination should stand. Decision will be entered under Rule 50.